ttIN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF TEXAS
SHERMAN DIVISION

| | |
|---|---|
| ELEVACITY U.S., LLC §<br>d/b/a THE HAPPY CO. f/k/a §<br>ELEPRENEURS U.S., LLC d/b/a §<br>ELEPREUNEURS, LLC, §<br>§<br>   Plaintiff, §<br>§<br>v. §<br>§<br>KIMBERLEY McLEAN, §<br>§<br>   Defendant. § | Case No. 4:22-cv-00047-SDJ |

## PLAINTIFF'S FIRST AMENDED COMPLAINT

Plaintiff Elevacity U.S., LLC d/b/a The Happy Co. f/k/a Elepreneurs U.S., LLC d/b/a Elepreneurs, LLC ("Plaintiff" or "Elevacity") files this First Amended Complaint[1] against Defendant Kimberley McLean ("Defendant" or "McLean").

## I. NOTICE OF COLLATERAL PROCEEDINGS

1.  Pursuant to Eastern District of Texas Local Rule CV-42(a), Plaintiff hereby notifies the Court that this case involves or may involve subject matter(s) that either comprise(s) all or a material part of the subject matter(s) or operative fact(s) of other action(s) and/or involve(s) all or some of the same parties in other cases presently pending in the Eastern District of Texas, to wit:

    A.  Case No. 4:22-cv-00042-ALM, *Elevacity U.S., LLC d/b/a The Happy Co., et al. v. Brian Christopher Schweda*, Eastern District of Texas, Sherman Division, filed on January 20, 2022 (District Judge Amos L. Mazzant, III presiding);

---

[1] On January 26, 2022, the Court issued its Order on Jurisdictional Pleading. (Dkt. #3). The Court ordered Plaintiff to file an amended complaint that alleges facts sufficient to invoke federal jurisdiction no later than February 2, 2022. (*Id*. at p. 3). Plaintiff's First Amended Complaint is timely and alleges such facts concerning Plaintiff's citizenship in Paragraphs 2 and 6.

**PLAINTIFF'S FIRST AMENDED COMPLAINT**     Page **1** of **14**
*Elevacity U.S., LLC v. Kimberley Mclean*
31623790v.1

      B.    Case No. 4:21-cv-00026-ALM, *Elepreneurs Holdings, LLC d/b/a Elepreneur, LLC, et al. v. Lori Ann Benson, et. al.*, Eastern District of Texas, Sherman Division, filed in state court on December 31, 2020, and removed to the Eastern District of Texas on January 13, 2021 (District Judge Amos L. Mazzant, III presiding);

      C.    Case No. 4:20-cv-00989-SDJ, *Sharing Services Global Corporation, et al. v. Robert Oblon*, Eastern District of Texas, Sherman Division filed on December 31, 2020 and presently stayed (District Judge Sean D. Jordan presiding); and

      D.    Case No. 4:21-cv-183-SDJ, *Sharing Services Global Corporation, et al. v. AmplifeiIntl, LLC, et al.,* Eastern District of Texas, Sherman Division filed on March 5, 2021 (District Judge Sean D. Jordan presiding).

## II. PARTIES AND VENUE

2.    Plaintiff Elevacity U.S., LLC d/b/a The Happy Co. f/k/a Elepreneurs U.S., LLC d/b/a Elepreneurs, LLC is a Texas limited liability company with its principal office in Plano, Collin County, Texas. Plaintiff is wholly owned by its sole member Sharing Services Global Corporation f/k/a Sharing Services, Inc ("Sharing Services"). Sharing Services is a corporation incorporated in Nevada with its principal place of business in Texas, making it a citizen of Nevada and Texas. Therefore, Elevacity is a citizen of the States of Nevada and Texas.

3.    Defendant Kimberley McLean is an individual residing in the State of Florida. Defendant is a citizen of the State of Florida. Defendant may be served with process at her home and place of business, 170 SW Sapling Gln, Lake City, FL 32024, or wherever she may be found.

4.    As stated, Defendant is a citizen of the State of Florida, who transacts business in the State of Texas, does not maintain a regular place of business in the State of Texas, and has not designated nor maintained a registered agent for service of process in Texas. Defendant is not registered to do business in the State of Texas, but engages in and has done business in the State of Texas as such term is defined in Sections 17.042 and 17.044(b) of the Texas Civil Practice & Remedies Code. The business which Defendant transacts in the State of Texas includes, but is not

limited to the acts described below, giving rise to Plaintiff's cause of action against Defendant. Because Defendant transacts business in the State of Texas, she has appointed the Texas Secretary of State as her agent for service of process pursuant to Tex. Civ. Prac. & Rem. Code § 17.044(b). Service of process may therefore alternatively be accomplished by serving duplicate copies of process on the Texas Secretary of State, who, in turn, shall immediately mail a copy of the process to the Defendant at her home and place of business at H170 SW Sapling Gln, Lake City, FL 32024.

5.  Venue is proper in this Court pursuant to Title 28 United States Code Section 1391 because a substantial part of the events or omissions giving rise to the claim occurred in the Eastern District of Texas, and the agreements between Plaintiff and Defendant were performable in the Eastern District of Texas.

### III.  JURISDICTION

6.  This Court has original jurisdiction over this proceeding pursuant to Title 28 United States Code Section 1332 because the amount in controversy exceeds $75,000 (exclusive of interest and costs) and there is complete diversity because Plaintiff and Defendant are citizens of different states.  Specifically, Plaintiff is a citizen of Texas and Nevada and Defendant is a citizen of Florida.

7.  This Court has personal jurisdiction over Defendant because she has purposefully availed herself of, and established minimum contacts with, the State of Texas through her conduct of business in Texas and Plaintiff's claims in this lawsuit arise out of and are directly related to those contacts with Texas.  Specifically, Defendant entered into the contracts giving rise to Plaintiff's claims with Plaintiff, a Texas company, and has interfered with Plaintiff's business contacts in Texas.  Further, Defendant's tortious conduct has been specifically and intentionally directed toward Texas.

## IV.  FACTUAL BACKGROUND

**A.     Plaintiff's Business**

8.     Plaintiff is a recognized worldwide leader in selling and marketing various health, wellness and happiness products and services through a direct sales community of independent contractors.

9.     Elevacity's business includes a network of Elevacity's Distributors: (i) who market and sell a variety of health, wellness and happiness products distributed exclusively under "The Happy Co." trade name (the "Happy Co. Product Line"), and (ii) recruit additional individuals into the Elevacity Distributor system to further promote and sell products and services to an increasing network of customers and other Distributors.  This network creates an up-line and down-line organizational structure whereby successful Distributors can develop substantial "down-line" Distributor networks totaling hundreds of other individuals.

10.     Plaintiff has invested considerable time, money and resources in protecting its business, culture, and community of Distributors in order to foster and grow a successful, collaborative and valuable business model.

11.     As a result, the departure of any Distributor from Plaintiff's organization can have substantial adverse effects on Plaintiff's network and business, in terms of the continued production of both up-line and down-line personnel within the Elevacity Distributor network.

12.     Accordingly, in order to protect its business, its culture, and its community of Distributors, Plaintiff requires each Distributor to agree to various agreements outlining the terms of each Distributor's relationship with Plaintiff and agreeing to and acknowledging the various policies and procedures, applicable to all Distributors.

**B.        Defendant Joins Plaintiff's Business and Agrees to Plaintiff's Agreements**

13.     On October 3, 2018, Defendant agreed to and accepted three essential documents (pursuant to an electronic verification system process): (i) Elepreneur Agreement; (ii) the Policies & Procedures of Elepreneurs LLC; and (iii) the Elepreneurs Social Media & Online Policy Guide (At a Glance).[2]  A true and correct copy of these agreements are attached, respectively, as Exhibits A-1, A-2, and A-3 to Exhibit A, Declaration of Anthony P. Chaplin.

14.     The standard and official process by which the Prior Agreements were to be accepted and agreed by a distributor of The Happy Co.'s predecessor must include the following: (i) logging in to the authorized predecessor's system (that distributor's "Back-Office"); (ii) read and accept the terms and conditions of the Prior Agreements; and (iii) manually click a box accepting all of the terms and conditions of the Prior Agreements.  If a distributor did not complete this process, that distributor would not be able to access their Back-Office.  Accessing the Back-Office was critical for a distributor because the Back-Office was the primary portal to order more product and keep track of the distributor's sales figures.

15.     The Policies & Procedures of Elepreneurs LLC stated that "Amendments and changes will be communicated to Elepreneurs through official Company publications, including posting on the website or by electronic mail.  Amendments are effective and binding on all Elepreneurs five days after publication."  See Exhibit A-2, Policies & Procedures of Elepreneurs LLC, p. 36. Plaintiff considered posting on "the website or by electronic mail" to including posting to a distributor's Back-Office.

---

[2] *The Elepreneurs Agreement*, the *Policies & Procedures of Elepreneurs LLC* and *Elepreneurs Social Media & Online Policy Guide* are collectively referred to as the "Prior Agreements."

16. In February 2021, Plaintiff utilized the Exigo platform to implement and support distributors' Back-Office. Distributors like Defendant did not have to accept a new acknowledgment to access their Back-Office on the Exigo platform such as that described above.

17. On September 30, 2021, The Happy Co. posted its Independent Brand Partner Agreement and Policies & Procedures (collectively, the "Agreements") to its distributors' Back-Offices. True and correct copies of these Agreements, respectively, are attached hereto as Exhibits A-5 and A-6. At the time Defendant terminated her relationship with Plaintiff, the Agreements were posted in her Back-Office for more than 30 days.

18. On information and belief, Defendant used her Facebook page to conduct her business related to the Happy Co. Product Line. This included both marketing The Happy Co. Product Line and recruiting additional Distributors. On information and belief, many Distributors followed and interacted with Defendant through her Facebook account and both current and recently resigned Distributors continue to follow and interact with Defendant on her Facebook page.

19. The Agreements contain various provisions which provide that Distributors, including Defendant, cannot use Plaintiff's confidential information, solicit other Distributors to leave Plaintiff or terminate their relationships with Plaintiff, use a social media site to draw inquiries from other Distributors about a new network marketing company, for the time periods described below, or disparage Plaintiff by making negative comments. The Agreements contain the following prohibitions, among others:

> **The Happy Co. Brand and Use of Company Materials.** * * * The Company also has the exclusive proprietary interest in its customer lists, customer information developed by or for the Company (such as credit data, product purchase information, and customer profile data), Brand Partner lists, customer lists (including those compiled through social media), manufacturing procedures, formulas, and

> other Confidential Information. Brand Partner shall not use or disclose any Confidential Information of the Company except as expressly permitted by the Agreement and agrees to keep such information confidential. Upon termination or nonrenewal of this Agreement, Brand Partner shall immediately cease the use of all of the Company's Marks, other Intellectual Property and Confidential Information and, if requested by the Company, return all such materials in their possession to the Company.

(Exhibit A-5, p. 2, ¶ 11),

> **Non-Solicitation/Sale of Other Products.** Brand Partner agrees that they will receive significant benefits from the Company including, but not limited to, the opportunity to participate in training and techniques which are valuable and essential to the success of a Brand Partner's business. In consideration for this benefit, and to the fullest extent allowable by law, Brand Partners agrees that they will not, during the term of this Agreement and for a period of twelve (12) months after the termination of the Agreement, directly or indirectly, Recruit any Brand Partner or employee of the Company for any other direct selling or network marketing business. For purposes of this Agreement, "Recruit" includes, but is not limited to: 1) communicating information or offering to provide information about another direct selling, network marketing, or social selling business to a Brand Partner or employee of the Company, 2) posting or messaging information about another direct selling, network marketing, or social selling business on a social media site utilized by Brand Partner to promote their Company business, or 3) tagging any Brand Partner or employee of the Company with a post on a social media site that provides or offers to provide information about direct selling, network marketing, or social selling business. In furtherance of this, a Brand Partner shall not take any action that may reasonably be foreseen to result in drawing an inquiry from other Brand Partners or employees of the Company. Violation of this non-solicitation may result in immediate termination of the violating Brand Partner's Agreement in addition to any other remedy available to the Company at law or in equity.

(*Id*. at p. 3, ¶ 12),

> **Social Media.**
>
> * * *
>
> During the term of this Agreement and for a period of twelve (12) calendar months thereafter, a Brand Partner may not use any social

> media site on which they discuss or promote, or have discussed or promoted, the Business or the Company's products to directly or indirectly solicit anyone for another direct selling or network marketing program (collectively, "Direct Selling Venture").
>
> During the term of this Agreement and for twelve (12) calendar months after the cancellation of a Brand Partner's Business for any reason, a Brand Partner shall not take any action on any social media site on which they discuss or present, or have discussed or presented, the Company's products or the Business that may reasonably be foreseen to draw an inquiry from a Brand Partner relating to the Brand Partner's other Direct Selling Venture or products. Violation of this provision shall constitute a violation of the non-solicitation provision in Policy 28.

(Exhibit A-6, p. 4, ¶ 15),

> **Non-solicitation.**
>
> 28.1 Brand Partners are free to participate in a Direct Selling Venture. However, during the term of this Agreement and for the applicable additional term set out below, a Brand Partner may not directly or indirectly Recruit other Brand Partners (the "Recruited Brand Partner") for any other network marketing business: 1) for six (6) months thereafter where the Brand Partner directly sponsored the Recruited Brand Partner or 2) for twelve (12) months thereafter where the Brand Partner did not directly sponsor the Recruited Brand Partner. For purposes of this provision, the term "directly sponsored" means only those sponsored by and enrolled directly beneath the Brand Partner.
>
> 28.2 The term "Recruit and Recruiting" means the direct or indirect, actual or attempted, sponsorship, solicitation, enrollment, encouragement, or effort to influence in any other way, another Brand Partner to enroll or participate in another network marketing opportunity. This conduct constitutes Recruiting even if the Brand Partner's actions are in response to an inquiry made by another Brand Partner or customer.

(*Id*. at p. 8, ¶ 28), and

> **Negative Comments.** Complaints and concerns about the Company should be directed to the Customer Service Department. Brand Partners shall not disparage, demean, or make negative remarks to third parties or other Brand Partners about the Company, its owners, officers, directors, governance officials, management,

> employees, other Brand Partners or the Marketing and Compensation Plans of the Company. Disputes or disagreements between any Brand Partner and the Company shall be resolved through the dispute resolution process, and the Company and Brand Partners agree specifically not to demean, discredit, or criticize one another on the Internet or any other public forum.

(*Id*. at p. 10, ¶ 36).

### C. Defendant Resigns from Plaintiff and Violates the Agreements.

20. On December 17, 2021, Defendant resigned from her position as a Distributor for Plaintiff. On December 19, 2021, Defendant posted to her Facebook page announcing her departure from Plaintiff and move to a new company.

21. Following this resignation, Defendant began marketing different products, specifically "guilt-free" bakery items such as bagels, pancakes and other bread items. Defendant also began marketing an "energizing" coffee product. The day after her resignation, Defendant posted a short video of coffee and a bagel with the following description of the products:



Multiple individuals commented on the above post requesting for Defendant to "keep [them] posted." In response to the comments, Defendant replied "You know we will" and "Of course."

22. Defendant's use of Facebook to violate the Agreements has been egregious. On December 27, 2021, she posted on Facebook announcing a tour in Connecticut to promote the new brand, confirming she was in fact using the same social media used to promote Plaintiff's products to promote her new social selling, network marketing business and/or Direct Selling Venture:[3]



In response, multiple individuals commented on the above post requesting for Defendant to "Tell me more" and "hook me up with those!" Moreover, former Distributor Judy Willodson was tagged in the post and commented "Whoot whoot ! Let the fun begin !" Former Distributor Melody Bobo also commented "I can't wait to all be together again…with a whole NEW higher VIBE!!!"

23. On January 1, 2022, she posted about the "company leaderboard" and tagged former Distributor Carol Hinojosa:

---

[3] Defined in the Agreements as "another direct selling or network marketing program." All capitalized terms not otherwise defined have the same definition set forth in the Agreements.

**PLAINTIFF'S FIRST AMENDED COMPLAINT**                                                                Page **10** of **14**
*Elevacity U.S., LLC v. Kimberley Mclean*
31623790v.1



In response, Ms. Hinojosa commented "It's easy when we have a product as good as this".

24. On January 2, 2022, she shared a post by Ms. Willodson about her new company's bagels stating "boy I can't tell you have excited I am to be able to enjoy bread again with 0 guilt!! Just one of the awesome products coming is bagels… 110 calories, 2 net carbs, 17 proteins and taste seriously so yummy! Check out this video." Several individuals responded asking for more information. Defendant repeatedly replied that they were coming in January, would be available soon, and that she would "put you on my VIP list."

25. On January 3, 2022, Defendant posted touting the "benefits" of her company's coffee product stating "well my head WAS hurting…but huh, I'm halfway through this cup of coffee and my headache is GONE!" The next day, Defendant again advertised the coffee in a post claiming "We have a customer page up and running for those that want to read up on some testimonials of our new AMAZING Coffee."

26. According to social media posts in early 2022, Defendant was hosting a tour to spread the word about her new venture and it was clear that former Distributors had joined Defendant's new venture.

V. CAUSES OF ACTION

A. Breach Of Contract

27. Plaintiff repeats and realleges the allegations contained in paragraphs 1 through 26, inclusive as if set forth herein in full.

28. The Agreements constitute valid and binding contracts between Plaintiff and Defendant. Plaintiff performed, tendered performance, or, alternatively, was excused from performing, its contractual obligations under the Prior Agreements and the Agreements.

29. Defendant has breached several of her obligations under the Agreements. Specifically, Defendant breached the non-solicitation and social media provisions of the Agreements. Such breaches have proximately caused Plaintiff to suffer damages in excess of the minimum jurisdictional limits of this Court.

B.   **Tortious Interference with Existing Contracts**

30. Plaintiff repeats and realleges the allegations contained in paragraphs 1 through 26, inclusive as if set forth herein in full.

31. Defendant has willfully and intentionally interfered with numerous contracts and/or relationships and such interference has caused substantial and direct harm to Plaintiff. *Community Health Sys. Prof'l Servs. v. Hansen,* 525 S.W.3d 671, 689 (Tex. 2017). The elements of tortious interference with contract are: (1) the existence of a contract subject to interference; (2) a willful and intentional act of interference; (3) which is the proximate cause of plaintiff's damages; and (4) actual damages or loss. *Texas Beef Cattle Co. v. Green,* 921 S.W.2d 203, 210 (Tex. 1996).

32. Plaintiff has existing contracts with its numerous distributors that are valid and subject to interference. This includes, without limitation, the various distributors referenced above which, on information and belief, Defendant has now caused to leave Plaintiff and instead sign on as distributors for Defendant's competing company resulting in direct harm to Plaintiff.

33. Defendant willfully and intentionally acted to interfere with these contracts by soliciting Plaintiff's employees, contractors, or distributors, to work for Defendant's competing

company. Defendant knew her actions would result in the termination of the valuable contractual relationships by Plaintiff and its independent contractor distributors, which in fact, did occur as demonstrated in detail above. This has led to numerous distributors leaving Plaintiff, many of which have now been converted to distributors of Defendant's competing company.

34. As a proximate cause of the tortious interference with contracts engaged in by Defendant as described above, Plaintiff was injured. Defendant has proximately caused Plaintiff to suffer damages in excess of the minimum jurisdictional limits of this Court.

## VI. CONDITIONS PRECEDENT

35. All conditions precedent to Plaintiff's recovery are excused, have been performed, or have occurred.

## VII. ATTORNEYS' FEES

36. Plaintiff repeats and realleges the allegations contained in paragraphs 1 through 36, inclusive as if set forth herein in full.

37. Plaintiff hired the law firm of Jackson Walker L.L.P. to represent it in this matter and have agreed to pay such attorneys a reasonable and necessary fee for their services. Pursuant to the Agreements, Sections 38.001 and other applicable law, Plaintiff is entitled to recover from Defendant its reasonable and necessary attorneys' fees.

WHEREFORE, Plaintiff Elevacity U.S., LLC d/b/a The Happy Co., f/k/a Elepreneurs U.S., LLC d/b/a Elepreneurs, LLC requests that Defendant be cited to appear and answer, and Plaintiff prays that upon final hearing hereof, a Judgment is entered in Plaintiff's favor against Defendant Kimberley McLean awarding Plaintiff:

      a.    actual, consequential, and incidental damages;
      b.    prejudgment interest, if applicable, at the highest lawful rate;
      c.    reasonable and necessary attorneys' fees;

d.   costs of court;

   e.   post-judgment interest on the above sums at the highest lawful rate; and

   f.   such other and further relief to which Plaintiff may be justly entitled.

Respectfully submitted,

**JACKSON WALKER L.L.P.**

By: */s/ Janet Douvas Chafin*
    **Janet Douvas Chafin**
    Designated Lead Attorney
    State Bar No. 02785200
    jchafin@jw.com
    1401 McKinney, Suite 1900
    Houston, Texas 77010
    Telephone: (713) 857-2676 cell
    Fax: (713) 308-4108 direct

    **Michael C. Roberts**
    State Bar No. 24082153
    mroberts@jw.com
    100 Congress, Suite 1100
    Austin, TX 78701
    Telephone: (512) 236-2251 direct

    **Blake T. Dietrich**
    State Bar No. 24087420
    bdietrich@jw.com
    2323 Ross Ave., Suite 600
    Dallas, Texas 75201
    Telephone: (214) 953-5992 direct

**ATTORNEYS FOR PLAINTIFF**